Redacted by Clerk of Court

ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Tuesday, July 9, 2024 5:02:48 PM
CASE NUMBER: 2024 CV 03773 Docket ID: 145331698
Mike Foley
CLERK OF COURTS MONTGOMERY COUNTY OHIO

IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, OHIO

| | |
|---|---|
| **IRG KETTERING I LLC**<br>4020 Kinross Lakes Parkway, Suite 200<br>Richfield, Ohio 44286<br><br>Plaintiff,<br><br>v.<br><br>**TENNECO AUTOMOTIVE OPERATING COMPANY INC.**<br>One International Drive<br>Monroe, Michigan 48161<br><br>and<br><br>Tenneco Automotive Operating Company Inc.<br>500 N. Field Drive<br>Lake Forrest, Illinois 60045<br><br>and<br><br>Tenneco Automotive Operating Company Inc.<br>c/o It's Statutory Agent:<br>Corporate Creations Network Inc.<br>1521 Concord Pike, Suite 201<br>Wilmington, Delaware 19803<br><br>Defendant | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT FOR MONEY DAMAGES** |

NOW COMES Plaintiff IRG Kettering I LLC ("Plaintiff" or "Kettering") and for its Complaint against Tenneco Automotive Operating Company Inc. ("Tenneco") states as follows:

1

33866191.1

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a limited liability company existing and created by virtue of the laws of the State of Ohio located at 4020 Kinross Lakes Parkway, Suite 200, Richfield, Ohio 44286. Plaintiff operates as a commercial landlord with respect to its business dealings with Tenneco.

2. Tenneco is a Delaware corporation with a principal place of business at 500 North Field Drive, Lake Forest, Illinois 60045. Tenneco operates as a designer, manufacturer, and marketer of automotive products.

3. The Court possesses jurisdiction over the subject matter of this Complaint pursuant to Ohio Rev. Code § 2305.01.

4. This Court has jurisdiction over this matter pursuant to Ohio Rev. Code. § 2307.382 because Tenneco has transacted business within the State of Ohio, caused an injury to Plaintiff within the State of Ohio, and has used and leased real property within the State of Ohio. *See* Ohio Rev. Code §2307.382(1), (3), and (8).

5. Venue is proper pursuant to Civ.R. 3(C)(3), and (5).

## FACTS COMMON TO ALL CLAIMS

A. <u>The Lease Agreement</u>

6. Plaintiff is the owner of real property located at 2555 Woodman Drive, Kettering, Ohio 45420 (the "Property").

7. A building consisting of approximately 2,223,094 square feet of space sits on the Property (the "Building") and the Property consists of other buildings and multiple acres of land.

8. Plaintiff and Tenneco are parties to a certain lease agreement dated on or about May 30, 2008 ("Original Lease") which commencement date is May 30, 2008 ("Commencement Date"). A true and correct copy of the Original Lease is attached hereto as <u>Exhibit 1</u>.

33866191.1

9. In the Original Lease, Tenneco agreed to lease nine hundred thirty thousand nine hundred thirty-two (930,932) square feet of the Building as depicted in Exhibit A of <u>Exhibit 1</u> (the "Leased Premises").

10. In Section 1.09 of the Original Lease, "Tenant acknowledges that on the Commencement Date it shall have had the opportunity to make such investigations and inspections of the Leased Premises which it deems necessary to determine whether the Leased Premises are in satisfactory condition and suitable for its intended use. Tenant acknowledges that Landlord has made no warranties and representations of any kind with regard to the condition of the Leased Premises, including all heating, ventilating and air conditioning systems (the "HVAC Systems"), water, sanitary sewer, storm sewer, plumbing, electrical and gas systems, the utilities, the roof, the building structure, windows, doors, partitions, driveways, parking areas, loading docks and facilities, landscaping or any other non-environmental conditions affecting the Property or the Leased Premises. Tenant further acknowledges that, subject to Section 1.06, Section 1.07, Section 16.04 and Article 17, it is leasing the Leased Premises in its "as is" condition, and that the Leased Premises are in the condition required under this Lease.

B. <u>First Amendment to the Lease Agreement</u>

11. Plaintiff and Tenneco are parties to a First Amendment to Lease Agreement ("First Amendment") dated on or about June 1, 2009. A true and correct copy of the First Amendment is attached hereto as <u>Exhibit 2</u>.

12. Pursuant to the First Amendment, Tenneco agreed to lease additional premises in the Building consisting of approximately 100,000 square feet of floor area as depicted in Exhibit A of <u>Exhibit 2</u> ("Additional Space").

3

13. In Section 3 of the First Amendment, Tenneco acknowledged that it "had an opportunity to make such investigations and inspections of the Additional Space which it deemed necessary to determine whether the Additional Space is in satisfactory condition and suitable for its intended use…"

14. In Section 3 of the First Amendment, Tenneco acknowledged that Landlord had "made no warranties or representations of any kind with regard to the condition of the Additional Space, including all HVAC systems, water, sanitary sewer, storm sewer, plumbing, electrical and gas systems, any utilities, the roof, the building structure, windows, doors, partitions, driveways, parking areas, loading docks and facilities, landscaping or any other non-environmental conditions affecting the Additional Space…"

15. In Section 3 of the First Amendment, Tenneco acknowledged that it was "leasing the Additional Space in its 'As Is' condition, and that the Additional Space is in the condition required under the Lease.

16. In Section 4 of the First Amendment, Tenneco agreed that upon termination of the Lease Agreement, it would surrender the Additional Space "in the condition required in, or otherwise pursuant to the terms of, Section 15.01 of [the Lease Agreement]."

C. Second Amendment to the Lease Agreement

17. Plaintiff and Tenneco are parties to a Second Amendment to Lease Agreement ("Second Amendment") dated on or about June 1, 2010. A true and correct copy of the Second Amendment is attached hereto as Exhibit 3.

18. Pursuant to the Second Amendment, Tenneco agreed to lease additional premises in the Building consisting of approximately 4,268 square feet of floor area as depicted in Exhibit A of Exhibit 3 ("2010 Additional Space").

4

33866191.1

19. In Section 3 of the Second Amendment, Tenneco acknowledged that it "had an opportunity to make such investigations and inspections of the 2010 Additional Space which it deemed necessary to determine whether the 2010 Additional Space is in satisfactory condition and suitable for its intended use…"

20. In Section 3 of the Second Amendment, Tenneco acknowledged that the landlord had "made no warranties or representations of any kind with regard to the condition of the 2010 Additional Space, including all HVAC systems, water, sanitary sewer, storm sewer, plumbing, electrical and gas systems, any utilities, the roof, the building structure, windows, doors, partitions, driveways, parking areas, loading docks and facilities, landscaping or any other non-environmental conditions affecting the 2010 Additional Space…"

21. In Section 3 of the Second Amendment, Tenneco acknowledged that it was "leasing the 2010 Additional Space in its 'As Is' condition, and that the 2010 Additional Space is in the condition required under the Lease."

22. In Section 3 of the Second Amendment, Tenneco affirmed that, as of the execution of the Second Amend, to Tenneco's "actual knowledge, no default or bridge by [Landlord] exists under [the Lease Agreement] and [Tenneco has no actual knowledge of defenses, offsets or counterclaims that could be asserted in an action by [Landlord] to enforce [Landlord's] remedies under [the Lease Agreement]."

D. <u>Third Amendment to the Lease Agreement</u>

23. Plaintiff and Tenneco are parties to a Third Amendment to Lease Agreement ("Third Amendment") dated on or about November 30, 2013. A true and correct copy of the Third Amendment is attached hereto as <u>Exhibit 4</u>.

5

24. In the Third Amendment, Plaintiff and Tenneco acknowledged that the Leased Premises contained approximately 935,200 square feet of space in the Building and approximately 1,155,934 square feet of improved space on the Property.

25. In Section 6 of the Third Amendment, Plaintiff and Tenneco acknowledged that Plaintiff was conducting $1,500,000 of work to the Property.

26. In Section 2 of the Third Amendment, Plaintiff and Tenneco agreed to extend the Lease Agreement through and including November 20, 2023.

E. <u>Fourth Amendment to the Lease Agreement</u>

27. Plaintiff and Tennecot are parties to a Fourth Amendment to Lease Agreement ("Fourth Amendment") dated on or about August 9, 2016.  A true and correct copy of the Fourth Amendment is attached hereto as <u>Exhibit 5</u>.  (Hereafter, the Original Lease, First Amendment, Second Amendment, Third Amendment, and Fourth Amendment referred to collectively as the "Lease Agreement").

28. In the Fourth Amendment, Plaintiff and Tenneco agreed that Tenneco would lease an additional 195,000 square feet of additional space in the Building as depicted in Exhibit A of <u>Exhibit 5</u> (the "Expansion Space").

29. In Section 3 of the Fourth Amendment, Plaintiff and Tenneco agreed that Tenneco would be "responsible for the maintenance, repair and replacement of the portion of the roof located directly above the Expansion Space."

F. <u>Tenneco's Maintenance Obligations Pursuant to the Lease Agreement.</u>

30. Pursuant to Section 4.01.A of the Original Lease, Tenneco agreed that it would "at its own expense…keep the Leased Premises in as good condition and repair as the same existed on the Commencement Date, reasonable wear and tear excluded, including without limiting the

6

generality of the foregoing, all plumbing, heating, air conditioning, ventilating, electrical, lighting, facilities, and equipment within the Leased Premises, and fixtures, interior walls, ceiling, roof, floors, subfloors, floor coverings, windows, doors, loading areas, load levelers, plate glass and skylights located within the Leased Premises, or used by [Tenneco], in connection with [Tenneco's] occupancy of the Leased Premises." Tenneco further agreed that all replacements and major and material structural repairs by Tenneco would be made by contractors approved in writing by Plaintiff (which approval would not be unreasonable withheld).

31. Pursuant to Section 4.01.B of the Original Lease, Tenneco was "responsible for maintaining, repairing and, to the extent deemed necessary by [Tenneco], replacing all areas of the Property exterior to the Leased Premises" other than some specified areas "in order to keep the same in as good condition and repair as of the Commencement Date subject to normal wear and tear, including the Leased Premises, the remainder of the Building, sewers, utility lines, the parking areas, the driveways, fencing, landscaping, and making all structural repairs to the Building so that the entire Property is kept in a good, clean and safe condition, in accordance with all applicable Laws including security for the entire property…" Under Section 1.01 of the Original Lease, the Property is defined as the Leased Premises and all other Land, buildings and improvements on the Land.

32. Section 4.02 of the Original Lease sets forth Plaintiff's obligations for maintenance and states: "Other than due to the negligence or intentional misconduct of [Plaintiff] or [Plaintiff's] agents, employees, or invitees, [Tenneco] acknowledges that [Plaintiff] shall not be required to maintain, repair, or replace all or any part of the Leased Premises, the Building, or the Property (other than Buildings 9 and 10 and Plant 16 and during the period Landlord occupies Building 9 and 10 and Plant 16, the Delphi Parking Areas). [Tenneco] expressly waives the

7

33866191.1

benefit of any statute or regulation which would afford [Tenneco] the right to make repairs at [Plaintiff's] expense because of [Plaintiff's] failure to keep the Leased Premises, the Building, or the Property in good order, condition and repair."

G.    <u>Tenneco's Surrender Obligations Pursuant to the Lease Agreement</u>

33.    Pursuant to Section 15.01 of the Original Lease, Tenneco agreed that, upon expiration or termination of the Lease Agreement, it would "surrender to [Plaintiff] the Leased Premises, in as good a condition and repair as existed on the Commencement Date, subject to normal wear and tear and the provisions of Sections 11 and 12 thereof." Further, Tenneco agreed to "remove all of its trade fixtures, machinery and equipment and other removable personal property, trash and debris and any other property of [Tenneco] which [Tenneco] is obligated to remove pursuant to the terms of [the Lease Agreement]…"

34.    Pursuant to Section 15.01 of the Original Lease, Tenneco agreed "perform all restoration and repair work made necessary by the removal of any such alterations, additions, improvements, fixtures or other property upon the expiration or earlier termination of [the Lease Agreement]."

H.    <u>Tenneco's Environmental Obligations Including Indemnification for Environmental Matters Pursuant to the Lease Agreement</u>.

35.    Pursuant to Section 17.01.A of the Original Lease, Tenneco agreed to not cause or permit the Leased Premises to be used in such a manner that is environmentally unfit under various laws, regulations and statutes and as enumerated and specified in said section.

36.    Pursuant to Section 17.01.C(a) of the Original Lease, Tenneco and Plaintiff agreed to retain a mutually agreeable environmental consultant to conduct a reasonable and cost-effective environmental assessment of the Leased Premises within sixty (60) days of the end of the lease term.

37. In Section 17.01.C(c) of the Original Lease, Tenneco and Plaintiff agreed that the environmental consultant would prepare a written report of its environmental assessment of the Leased Premises.

38. Pursuant to Section 17.01.I of the Original Lease, Tenneco agreed to indemnify Landlord from and against any and all liabilities related to or arising from: "(1) Tenant Post-Commencement Date Contamination at, from or otherwise associated with the Leased Premises, including any Post-Commencement Date Releases of Hazardous Substances…(2) exasperation of Pre-Commencement Date Contamination by (A) Tenant, (B) its affiliates, agents, employees, contractors, invitees, licensees, subtenants, successors or assignees, (C) utility workers undertaking action benefitting Tenant, or (D) Trespassers" along with other obligations enumerated therein and other obligations as set forth in the Lease Agreement.

39. Pursuant to Section 17.01.L of the Original Lease, Tenant agreed to be responsible for compliance with Environmental Laws at the Leased Premises during the Lease Term and any extension thereto amongst other obligations.

I. Tenneco's Indemnification Obligations for Property Damages Resulting from Breach.

40. In Section 5.04 of the Original Lease, Tenneco agrees to "defend, indemnify and hold harmless" Plaintiff "from and against any and all claims, suits, liabilities, losses, costs or expenses, including reasonable legal, accounting, consulting, engineering and other expenses which may be imposed upon, incurred by, or asserted" against Plaintiff "…for personal injuries, death, or property damage…(ii) arising as a result of "Tenneco's failure to comply with any provision of this lease during the Lease Term"….and (iv) the breach or default of any provision of this Lease hereunder by [Tenneco].

33866191.1

41. In Section 5.04 of the Original Lease, Tenneco further agreed that "[t]he indemnities provided herein shall include reasonable attorneys' fees" incurred by Plaintiff.

J. Termination of the Lease Agreement.

42. Tenneco notified Plaintiff that it did not intend to extend the Lease Agreement.

K. Miller Valentine Property Condition Report.

43. On or around April 11, 2023, Miller Valentine Construction completed a property condition assessment of the Property (the "Miller Valentine Report") at the request of Plaintiff. A spreadsheet detailing the conclusions of the Miller Valentine Report is attached hereto as Exhibit 6.

L. Verdantas Environmental Assessments.

44. In January, 2023 and February, 2024, Verdantas Environmental Solutions Group ("Verdantas"), an integrated environmental science, engineering and consulting firm, conducted assessments of the Premises and concluded that a number of environmental and related significant problems are a direct result of Tenneco's use of the Premises and will be shown to be in violation of the Lease Agreement.

45. The Miller Valentine Report and the Verdantas Assessments confirm that Tenneco did not maintain the Property, Leased Premises, and/or Land in as good condition and repair as the same existed on the Commencement Date.

46. On or around April 19, 2023, representatives from Plaintiff met with representatives from Tenneco to discuss Tenneco's lease surrender obligations.

M. The EnSafe Report.

47. Pursuant to Section 17.01.C. of the Original Lease, Tenneco retained EnSafe to conduct an environmental assessment of the Property (hereinafter the "EnSafe Report").

10

33866191.1

48. The EnSafe Report shows higher levels of contaminants compared to the 2008 baseline.

49. Notwithstanding the obligation to do so, Tenneco has refused to provide Plaintiff with a full and complete copy of EnSafe's Report.

N. <u>Notice of Default.</u>

50. Section 13.01.B of the Original Lease provides: "An Event of Default is a failure by [Tenneco] to conform or comply with any of the terms, covenants or agreements to be performed by [Tenneco] under [the Lease Agreement], other than those described in Section 13.01.8. hereof, for a period of thirty days after written notice of such default has been given to [Tenneco]; provided however that if the cure of such a matter reasonably requires in excess of thirty days, no Event of Default shall be deemed to have occurred if [Tenneco] commences such cure within thirty (30) days after receipt of such notice and thereafter diligently prosecutes such cure to completion; provided that such cure period shall not extend past one hundred eighty (180) days."

51. On or about December 1, 2023, Plaintiff issued a notice of default (the "Default Letter") to Tenneco advising it of significant deferred maintenance and repairs required under the Lease Agreement. A true and correct copy of the Default Letter is attached hereto as <u>Exhibit 7</u>.

52. In the Default Letter, Plaintiff informed Tenneco that it had breached the Lease Agreement by failing to maintain the Property in as good condition and repair as the same existed on the Commencement Date.

53. In the Default Letter, Plaintiff notified Tenneco that it had breached Section 15 of the Lease Agreement by removing trade fixtures, machinery, and equipment and other personal property and failing to perform the required restoration and repair work.

11

33866191.1

54. In the Default Letter, Plaintiff notified Tenneco that it had breached Article 17 of the Lease Agreement by failing to indemnify Plaintiff for liabilities related to Tenneco's post-Commencement Date contamination of the Leased Premises and the Property.

55. To date, Tenneco has failed to remedy the breaches set forth in the Default Letter. In fact, to date, Tenneco has failed and refused to respond, in any way, to Plaintiff's Default Letter or other communications to discuss the serious breaches and issues.

## COUNT ONE:
## BREACH OF MAINTENANCE OBLIGATIONS IN THE LEASE AGREEMENT

56. Plaintiff realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully rewritten herein.

57. The Lease Agreement constitutes a valid contract.

58. Plaintiff has performed all of its obligations under the Lease Agreement.

59. Tenneco has breached the Lease Agreement by failing to fulfill its Maintenance Obligations and other obligations including, but not necessarily limited to, those in Sections 4.01.A, 4.01.B, and 4.02 of the Original Lease.

60. Tenneco has failed to maintain Plaintiff's Property, the Leased Premises, and/or the Land in as good a condition and repair that existed on the Commencement Date, subject to normal wear and tear.

61. As an example, Tenneco's failure to main parking areas on Plaintiff's Property, the Leased Premises and/or the Land has caused significant surface cracking and overgrowth.

62. All conditions precedent to Plaintiff's recovery under the Lease Agreement have occurred.

12

63. As a result of Tenneco's breaches, Plaintiff's Property, the Leased Premises, and/or Land are burdened with poor property conditions, making it more challenging to relet to a future tenant.

64. As a result of Tenneco's breaches, Plaintiff has been damaged in an amount in excess of $10,000,000, plus additional sums that may become due and owing to Plaintiff subsequent to the filing of this Complaint, including but not limited to the cost of fulfilling Tenneco's Maintenance Obligations.

## COUNT TWO:
## BREACH OF SURRENDER OBLIGATIONS IN THE LEASE AGREEMENT

65. Plaintiff realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully rewritten herein.

66. The Lease Agreement constitutes a valid contract.

67. Plaintiff has performed all of its obligations under the Lease Agreement.

68. Tenneco notified Plaintiff that it did not intend to extend the Lease Agreement.

69. Tenneco has breached the Lease Agreement by failing to fulfill its Surrender Obligations and other obligations pursuant to the Lease Agreement.

70. Tenneco has failed to surrender Plaintiff's Property, the Leased Premises, and/or Land in as good a condition and repair that existed on the Commencement Date, subject to normal wear and tear.

71. Tenneco has removed alterations, additions, improvements, and/or fixtures, and has failed to perform the restoration and repair work made necessary by the removal of the alternations, additions, improvements and/or fixtures.

72. All conditions precedent to Plaintiff's recovery under the Lease Agreement have occurred.

73. As a result of Tenneco's breach, Plaintiff has been damaged in an amount in excess of $10,000,000, plus additional sums that may become due and owing to Plaintiff subsequent to the filing of this Complaint, including but not limited to the cost of fulfilling Tenneco's Surrender Obligations.

**COUNT THREE:**
**BREACH OF INDEMNIFICATION OBLIGATIONS FOR ENVIRONMENTAL MATTERS**

74. Plaintiff realleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully rewritten herein.

75. The Lease Agreement constitutes a valid contract.

76. Plaintiff has performed all of its obligations under the Lease Agreement.

77. Tenneco's use of Plaintiff's Property, Leased Premises, and/or Land has resulted in environmental issues, including but not limited to higher levels of contaminates, which has decreased the value of the Plaintiff's Property, Leased Premises, and/or Land and exposed Plaintiff to potential legal and financial liability.

78. Tenneco has breached the Lease Agreement regarding environmental obligations, duties and other covenants, including but not limited to 17.01.A., 17.01.C., and 17.01.I. which specifically relates to Tenneco's obligations to indemnify and hold harmless Plaintiff from and against any and all liabilities related to or arising from "Tenant Post-Commencement Date Contamination at, from, or otherwise associated with the Leased Premises, including any Post-Commencement Date Releases of Hazardous Substances … exasperation of Pre-Commencement Date Contamination by (A) Tenant, (B) its affiliates, agents, employees, contractors, invitees, licensees, subtenants, successors or assignees, (C) utility workers undertaking action benefitting Tenant, or (D) trespassers; (3) removal of the Acquired Assets as well as all materials or

14
33866191.1

Hazardous Substances brought onto, generated at or Released at the Leased Premises during the Lease Term and any extensions thereto, by Tenant or its Affiliates and their agents or invitees (or utility workers undertaking actions benefitting Tenant), or trespassers; (4) the Post Commencement Date generation, manufacturing, refining, storage, treatment, transportation, handling, production, processing, transferring or disposal of Hazardous Substances, waste of any kind or other materials or products after from the Leased Premises by Tenant (or any of its affiliates, agents or invitees) and (5) any decommissioning, cessation of regulated operations, or closure or other regulatory or permit obligations relating to the Acquired Assets …Tenant's obligations in this Section 17.01.I. shall survive the termination of the Lease.

79. Tenneco has also breached the Lease Agreement by refusing to provide Plaintiff with a full and complete copy of the EnSafe Report.

80. All conditions precedent to Plaintiff's recovery under the Lease Agreement have occurred.

81. As a result of Tenneco's breaches of the Lease Agreement, Plaintiff has been damaged in an amount in excess of $10,000,000, plus additional sums that may become due and owing to Plaintiff subsequent to the filing of this Complaint, including but not limited to the cost of fulfilling Tenneco's Indemnification Obligations.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court:

  a. Render judgment in favor of Plaintiff as to all Claims raised herein;

  b. An award of damages in favor of Plaintiff and against Tenneco in an amount in excess of $10,000,000 together with additional costs that may become due and owing subsequent to the filing of this Complaint, including, but not limited to, the costs of the Premises Maintenance Obligations;

  c. Legal fees and related litigation costs; and

15

33866191.1

d. Such other relief in law or equity to which Plaintiff may be entitled.

Respectfully submitted,

/s/ Jennifer F. Phillips
DAVID L. DRECHSLER (0042620)
JENNIFER F. PHILLIPS (0076769)
McDonald Hopkins LLC
600 Superior Avenue, Suite 2100
Cleveland, Ohio 441114
Telephone: (216) 348-5400/Fax: (216) 348-5474
Email: ddrechsler@mcdonaldhopkins.com
jphillips@mcdonaldhopkins.com

*Counsel for Plaintiff IRG Kettering I LLC*

33866191.1